UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GARRY A. DUNCAN, ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| v. ) | No. 1:15-cv-00393-JHR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| *Acting Commissioner of Social Security,* ) | |
| ) | |
| *Defendant* ) | |

### MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found that the plaintiff had no medically determinable impairment as of his date last insured for benefits, December 31, 2005. The plaintiff seeks remand on the bases that the administrative law judge erred in reaching that conclusion and in failing to apply Social Security Ruling 83-20 ("SSR 83-20") to infer his onset date of disability. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 1-10. I find no reversible error and, accordingly, affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 15, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 18.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2005, Finding 1, Record at 16; that, through his date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment, Finding 3, *id.*; and that he, therefore, had not been disabled from July 1, 2005, his alleged onset date of disability, through December 31, 2005, his date last insured, Finding 4, *id.* at 18. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the

individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The administrative law judge found that, although the plaintiff and his wife both testified that he had longstanding mental health issues and had long engaged in behaviors that included the performance of elaborate rituals and use of the bathroom 15 to 20 times a day, "[u]nfortunately, there are no contemporaneous medical records to establish any medically determinable impairments or the degree of limitation that existed prior to the date last insured." Record at 17. She explained that the record contained neither "medical evidence prior to December of 2006, almost one year after the date last insured[,]" nor "medical signs or laboratory findings that would support the existence of a medically determinable impairment as of the date last insured." *Id*. at 18.

She gave great weight to the 2012 opinions of three agency nonexamining consultants, Brian Stahl, Ph.D., Susan Moner, M.D., and Robert Hayes, D.O., that there was insufficient evidence to establish the existence of a medically determinably impairment as of the plaintiff's date last insured. *See id*.; *see also id*. at 87-88, 94.

She gave little weight to a March 2013 opinion of treating source Sally Weiss, M.D., that the plaintiff experienced significant work-related mental limitations secondary to generalized anxiety and obsessive compulsive disorder ("OCD") in that (i) Dr. Weiss did not begin treating the plaintiff until June 2012, almost seven years after his alleged disability onset date and six-and-a-half years after his date last insured, and (ii) Dr. Weiss's statements regarding the plaintiff's condition as of his date last insured were "not persuasive as they [were] based on the [plaintiff's] self-reports made years after the date last insured," and Dr. Weiss did "not describe any medical

signs or laboratory findings prior to the date last insured that would support her opinion." *Id.* at 18.

The plaintiff contends that this determination was unsupported by substantial evidence in that the administrative law judge failed to evaluate whether he had a medically determinable impairment(s), without regard to his date last insured, and then to assess the severity of that impairment(s) with the benefit of evidence postdating his date last insured. *See* Statement of Errors at 4-6. He adds that the administrative law judge failed to assess the credibility of either his testimony or that of his wife or to discuss evidence postdating his date last insured that he contends shed light on his condition as of the relevant time period, including records showing that:

1. He presented to Stillwater Family Medicine on December 7, 2006, with "extreme anxiety – panic attacks" and physical symptoms that included heart palpitations and diarrhea, provided a "long list of symptoms written down[,]" and was found on examination to have areas on his head where he had pulled out his hair. *Id.* at 3 (quoting Record at 434).

2. His palpitations were determined in testing performed later that month to be noncardiac in nature. *See id.*

3. As of December 2008, when he next received medical treatment, he was diagnosed with severe anxiety and obsessive compulsive disease traits. *See id.* at 3-4. At Stillwater Family Medicine in February 2009, he was diagnosed with unspecified episodic mood disorder, OCD, personality disorder, and panic disorder with agoraphobia, following which he began receiving mental health treatment. *See id.* at 4.

4. He received additional mental health evaluation and treatment in 2009 and 2010, and began treating with Dr. Weiss on June 7, 2012. *See id.*

5. In her letter dated March 14, 2013, Dr. Weiss wrote:

> [The plaintiff's] generalized anxiety disorder is such that when stressed he feels the immediate urge to use the bathroom, this can happen and often does in the middle of [a] meeting, in the middle of doing anything, it makes it very difficult for him to meet expectations. He also believes things should be done "right[,"] and when they are not done to his specifications, he gets angry; this seems to have dated back since before 2005, and interfered a great deal with his efforts to get an education.

*Id*. (quoting Record at 482) (edited to conform to underlying text).

He argues that the administrative law judge failed to provide good reasons for rejecting the Weiss opinion, and that this was not harmless error because she assessed limitations of disabling severity that she indicated existed prior to his date last insured. *See id*. at 6.

For the proposition that the administrative law judge was required to consider whether, at any point, the plaintiff had a medically determinable impairment, he cites SSR 83-20. *See id*. at 4-5. In the alternative, he contends that even if SSR 83-20 is inapposite, remand is warranted in these circumstances. At oral argument, his counsel distinguished this case from others in which this court has held SSR 83-20 inapplicable in that, here, the administrative law judge flatly refused to consider the totality of the evidence because of a lack of contemporaneous medical evidence, despite documentation that previous records had been destroyed.

This is a sympathetic case. However, I conclude that SSR 83-20 is inapposite and that, pursuant to the applicable five-step sequential evaluation process, the administrative law judge reached a supportable determination that the plaintiff failed to demonstrate that he had a medically determinable impairment as of his date last insured.

### A. Failure To Apply SSR 83-20

The plaintiff contends that the administrative law judge erred in failing to apply SSR 83-20, which he asserts would have required her to consult a medical advisor to determine the date of the onset of his disability. *See* Statement of Errors at 6-10. SSR 83-20 provides, in relevant part:

5

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.
>
> ***
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 49, 51.

The plaintiff acknowledges that this court has held that SSR 83-20 applies only when a claimant has been determined to be disabled, typically in the context of a separate application for for Supplemental Security Income ("SSI") benefits. *See* Statement of Errors at 9; *Kelly v. Astrue*, No. 06-168-P-S, 2007 WL 2021923, at *2 (D. Me. July 11, 2007) (rec. dec., *aff'd* Aug. 27, 2007) ("An official SSI disability finding typically supplies the predicate for triggering of the duty to infer disability onset date pursuant to SSR 83-20.").[2] However, he argues that this interpretation of SSR 83-20 is wrong – a proposition for which he relies on *Wilson v. Colvin*, 17 F. Supp.3d 128 (D.N.H. 2014). *See* Statement of Errors at 9-10.

---

[2] As the commissioner points out, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 15) at 10, in *Kelly*, this court recognized an exception when an administrative law judge makes what is "tantamount to a finding of current disability[,]" *Kelly,* 2007 WL 2021923, at *3. In *Kelly*, the administrative law judge admonished the claimant's counsel at hearing for failing to ensure that the claimant submitted an application for SSI benefits and stated in his decision that the claimant had "almost certainly" been disabled subsequent to his date last insured for SSD benefits. *Id*. at *2. The claimant filed an SSI application that was rejected based on excess income, rather than failure to demonstrate disability. *See id*. The plaintiff does not claim that his case falls within the *Kelly* exception. Clearly, it does not. The administrative law judge never considered whether he was presently disabled. *See* Record at 16-18.

In *Wilson*, the United States District Court for the District of New Hampshire held that SSR 83-20 applies when there is a need to determine whether a claimant was disabled as of a remote date, regardless of whether there is a finding that the claimant is currently disabled. The *Wilson* court explained:

> [S]ome courts attach significance to the statement in the introduction to SSR 83-20 that 'in addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.' This sentence merely acknowledges the fact that an ALJ must make an onset date determination if he finds that the claimant was disabled when she applied for benefits. It does not in any way suggest SSR 83-20 is inapplicable in cases where an ALJ denies a claim for [SSD benefits] by finding that the claimant was not disabled as of her date last insured.

*Wilson*, 17 F. Supp.3d at 142 (citation and internal quotation marks omitted).

The *Wilson* court rejected the commissioner's argument that this construction of SSR 83-20 would impose an undue administrative burden on the agency, stating:

> First, I can conceive of no reasonable public policy basis for the SSA [Social Security Administration] to interpret the Social Security Act in a manner that would permit, and possibly encourage, an ALJ to avoid the inconvenience of either calling a medical advisor or making a finding regarding present disability in a case in which the evidence of a claimant's disability onset date is ambiguous. Further, an ALJ always has the option to expressly find that a claimant is not disabled as of the date of the hearing, which would obviate the need to call a medical advisor to determine a (nonexistent) onset date. Consequently, there is no merit to the Commissioner's concern that ALJs might be required to consult a medical expert regardless of whether there is any evidence of a medically determinable severe impairment or of disability.

*Id.* at 142-43 (citations, internal punctuation, and footnote omitted).

As the commissioner points out, *see* Opposition at 11, she challenged this interpretation of SSR 83-20 in an appeal of a similar case decided by the United States District Court for the District of New Hampshire, *Fischer v. Colvin*, Civil No. 13-cv-00463-PB, 2014 WL 5502922 (D.N.H. Oct. 30, 2014), which was pending before the First Circuit as of the date of oral argument in this case.

7

Following oral argument, the commissioner notified the court that the First Circuit had issued its ruling in *Fischer*. *See* Notice of Recent First Circuit Decision ("Notice") (ECF No. 21); *Fischer v. Colvin*, __ F.3d __, No. 15-1041, 2016 WL 4056032 (1st Cir. July 29, 2016). She argued that *Fischer* did not require this court to revisit its interpretation of SSR 83-20 in that, although the First Circuit called attention to the "analytical problems" surrounding that ruling, it expressly declined "to resolve the parties' dispute concerning the general applicability of SSR 83-20[.]" Notice at 1-2 (quoting *Fischer*, 2016 WL 4056032, at *1, *5) (edited to conform to underlying quotation). The First Circuit instead ruled that, "[e]ven assuming that [SSR 83-20] applies here, the medical evidence was not ambiguous and thus the ALJ did not need to draw inferences as to whether Fischer's onset date preceded the expiration of her insured status." *Fischer*, 2016 WL 4056032, at *1. The commissioner contended that, therefore, with respect to the question of the circumstances triggering SSR 83-20's application, the court should take the same position it had in *Hughes v. Colvin*, No. 2:15-cv-150-JHR, 2016 WL 225688 (D. Me. Jan. 19, 2016): that it would hew to its interpretation of SSR 83-20 absent guidance from the First Circuit by way of a ruling in *Fischer* (or any other case). *See* Notice at 2; *Hughes,* 2016 WL 225688, at *3 n.3.

The plaintiff countered that *Fischer* supported his case in that the First Circuit (i) recognized that medical evidence can be ambiguous, warranting calling a medical advisor, when "contemporaneous medical evidence is lacking" but "post-DLI [date last insured] medical records may support a finding that the claimant's impairments were severe prior to her DLI, [d]epending on the nature of the disability[,]" and (ii) described the commissioner's views on the role of present disability in determining disability as of a remote date last insured as "perplexing" and possibly "antithetical to the spirit of the Social Security Act." Response to Notice of Recent

First Circuit Decision (ECF No. 24) at [2]-[3] (quoting *Fischer*, 2016 WL 4056032, at *4, *6) (emphasis in original) (citation and internal quotation marks omitted).

The commissioner has the better argument. *Fischer* plainly did not resolve the point at issue here: whether SSR 83-20 applies in cases in which a claimant has not been found currently disabled. *See Fischer*, 2016 WL 4056032, at *4. While the First Circuit strongly criticized the commissioner's views on that issue, it did not invite lower courts to disregard them. To the contrary, the First Circuit observed that "the gaps and inconsistencies in the Commissioner's arguments as to the general applicability of SSR 83-20 pose a challenge to any decisionmaker attempting to determine when or how to apply the ruling[,]" urging the commissioner "to act swiftly to revise SSR 83-20 and enunciate a coherent explanation of the ruling's purpose and application, thereby providing much-needed clarity for claimants, the agency's own adjudicators, *and the courts*." *Fischer*, 2016 WL 4056032, at *7 (emphasis added).

While I am sympathetic to the plaintiff's counsel's argument that it is inequitable for the application of SSR 83-20 to turn primarily on the happenstance of whether a currently disabled claimant meets the income test to qualify for SSI benefits, it is not clear that, in promulgating SSR 83-20, the commissioner made the policy choice to displace the default five-step sequential evaluation process in all SSD cases in which there is a remote date last insured, requiring adjudicators in every such case to determine whether a claimant is currently disabled. Absent the clarification that the First Circuit has urged the commissioner to provide, I decline to alter this court's longstanding precedent on this point.

To the extent that the First Circuit construed language in SSR 83-20 regarding the need to call a medical advisor in a manner favorable to the plaintiff, that does not help him in view of the inapplicability of the ruling to his case.

### B. Analysis of Evidence Pursuant to Five-Step Process

Turning to the plaintiff's alternative argument that the administrative law judge reached an unsupportable decision even absent application of SSR 83-20, I find no harmful error.

As the commissioner argues, *see* Opposition at 3-9, on the evidence presented, the administrative law judge supportably determined that the plaintiff had failed to carry his burden of establishing that he had a medically determinable impairment prior to his date last insured.

"No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms[,]" Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2015) ("SSR 96-7p"), at 133; *see also* 20 C.F.R. § 404.1508.  A plaintiff's own reports to medical providers do not establish the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 404.1528(a); *Harthorne v. Astrue*, Civil No. 08-120-B-W, 2008 WL 4937806, at *7 (D. Me. Nov. 16, 2008) (rec. dec., *aff'd* Dec. 8, 2008).

"It is the plaintiff's burden to produce sufficient evidence to allow the commissioner to reach a conclusion at Step 2; the absence of evidence provides support for a conclusion adverse to the plaintiff at this point in the sequential evaluation process." *Coffin v. Astrue*, Civil No. 09-487-P-S, 2010 WL 3952865, at *2 (D. Me. Oct. 6, 2010) (rec. dec., *aff'd* Oct. 27, 2010).

### 1. Raw Medical Evidence

The plaintiff cites *Basinger v. Heckler*, 725 F.2d 1166 (8th Cir. 1984), for the proposition that "medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status." Statement of Errors at 5 (quoting

*Basinger*, 725 F.2d at 1169).  However, *Basinger* is materially distinguishable in that there was no dispute that the claimant had a medically determinable impairment prior to his date last insured. *See Basinger*, 725 F.2d at 1167 ("It is evident that Basinger's ultimately disabling problems began prior to the expiration of his insured status in 1978.").

In this case, no contemporaneous medical evidence established that the plaintiff had a medically determinable impairment as of his date last insured.  While, as the plaintiff's counsel noted at oral argument, there is documentation that the plaintiff was last treated by a "Dr. Mari" of Orangeburg Medical Group in Modesto, California, in 2001 but that the practice group had destroyed those records as of April 13, 2009, Record at 330, that unfortunate circumstances does not distinguish this case from this court's prior relevant precedent, *see, e.g.*, *Kovacs v. Astrue*, Civil No. 08-241-B-W, 2009 WL 799407, at *2 (D. Me. Mar. 23, 2009) (rec. dec., *aff'd* Apr. 10, 2009) ("The [claimant] cites no authority for the proposition that taking into consideration the absence of contemporaneous treatment records [lost in a fire] was improper, and my research reveals none. While the unfortunate loss of [treating source] records rendered it more difficult for the [claimant] to make her case, it did not relieve her of her Step 2 burden.") (citation and footnote omitted).

It is true that, apart from discussing the Weiss opinion, the administrative law judge did not even consider whether the medical evidence of record, all of which postdated the plaintiff's date last insured, established the existence of a medically determinable impairment as of that date. *See* Record at 17-18.  Yet, assuming that was error, the plaintiff fails to demonstrate that it was outcome-determinative.  *See, e.g., Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

11

As the commissioner argues, *see* Opposition at 4-6, the subsequent raw medical evidence of record does not, on its face, establish the existence of a medically determinable impairment as of the relevant date. The December 7, 2006, Stillwater notes do not indicate that any diagnosis was made and are unsigned. *See* Record at 434-37. While the December 2008 St. Joseph Hospital notes contain diagnoses of severe anxiety and OCD traits, they appear to have been provided by a physician's assistant, Julie Quinn, PA-C, *see id*. at 440-42, a type of practitioner who is not an "acceptable medical source[] to establish whether you have a medically determinable impairment(s)[,]" 20 C.F.R. § 404.1513(a). While, in February 2009, Donna R. Huff, PMH-NP, diagnosed multiple mental health impairments, and her report was cosigned by a physician, *see* Record at 413-15, an "acceptable medical source" for purposes of establishing the existence of a medically determinable impairment, *see* 20 C.F.R. § 404.1513(a), Huff did not express any opinion as to the onset of those impairments, *see* Record at 413-15. And, while these notes indicate that the plaintiff told Huff that he had suffered from depression and anxiety since he was 10 or 11 years old, *see id*. at 405, the plaintiff's statements, alone, cannot establish a medically determinable impairment, *see, e.g*., 20 C.F.R. § 404.1508.

The plaintiff points out that he treated with other mental health providers after February 2009; however, he identifies no component of those underlying treatment notes indicating that he had a medically determinable mental health impairment prior to his date last insured. *See* Statement of Errors at 4.

### 2. Weiss Opinion

Although Dr. Weiss indicated, in her March 2013 letter, that the plaintiff's symptoms "seem[ed] to have dated back since before 2005," Record at 482, the administrative law judge's decision to accord that retrospective opinion little weight passes muster.

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id.*[3] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

At oral argument, the plaintiff's counsel complained that the administrative law judge failed to assess Dr. Weiss's opinion based on the totality of relevant factors, including her observation of the plaintiff as of the time she began treating him and whether her opinion was consistent not only with his history by his self-reports but also with available medical records postdating his date last insured.

Nonetheless, the administrative law judge supplied the requisite good reasons for her handling of the opinion, explaining that Dr. Weiss did not begin treating the plaintiff until almost

---

[3] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant. *See* 20 C.F.R. § 404.1527(c).

seven years after his alleged onset date of disability, based her statements regarding his condition as of that time on his self-reports made years later, and described no medical signs or laboratory findings prior to his date last insured that would support her opinion. *See* Record at 18. The latter point was of particular importance in that the onus was on the plaintiff to prove that he suffered from a medically determinable impairment as of his date last insured.

In addition, as the commissioner points out, *see* Opposition at 9, this court has upheld administrative law judges' rejection of retrospective treating source opinions on similar bases, *see, e.g., Coutu v. Colvin*, No. 1:13-cv-00317-JAW, 2014 WL 5454527, at *3 (D. Me. Oct. 27, 2014) (upholding decision to accord retrospective treating source opinion little weight when it was "not supported by any clinical observations" and was inconsistent with other evidence, including the opinion of an agency nonexamining consultant that there was no medical evidence establishing the existence of a medically determinable impairment during the period at issue); *McGlynn v. Astrue*, No. 1:11-cv-395-DBH, 2012 WL 2913535, at *6-*7 (D. Me. June 28, 2012) (rec. dec., *aff'd* July 17, 2012) (upholding decision to reject retrospective treating source opinion on bases that it was purely speculative because source had not begun treating claimant until 16 months after his alleged onset date of disability and was unsupported by contemporaneous evidence of record).

### 3.  Testimony at Hearing

While the administrative law judge also failed to assess the credibility of the plaintiff's testimony or that of his wife, *see* Record at 17, that was not error in these circumstances. Such testimony is of no consequence absent the existence of a medically determinable impairment. *See, e.g., Coffin*, 2010 WL 3952865, at *5 ("[W]here no impairment is found, as is the case here, pain and credibility never become issues."). The plaintiff cites *Basinger* for the proposition that the failure to assess credibility was error. *See* Statement of Errors at 5; *Basinger*, 725 F.2d at 1170 ("Where proof of a disability depends substantially upon subjective evidence, . . . a credibility

14

determination is a critical factor in the [commissioner's] decision."). However, *Basinger* is again materially distinguishable in that there was no dispute that the claimant had a medically determinable impairment prior to his date last insured. *See Basinger*, 725 F.2d at 1167.

In sum, the finding that the plaintiff failed to meet his burden of demonstrating that he suffered from a medically determinable impairment prior to his date last insured is supported by substantial evidence.

## II.  Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 28th day of September, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge